# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **GE OIL & GAS, LLC** | **CASE NO.  6:19-CV-00054** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **DALIS MORENO WAGUESPACK, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## RULING

On March 5, 2020, the Court *sua sponte* raised the issue of whether subject matter jurisdiction exists in the present case and ordered briefing addressing the Court's jurisdiction. [ECF No. 26]. On June 2, 2020, the Court held a telephone conference to discuss the briefs filed. [ECF No. 40]. For the reasons discussed at the conference, the Court found further briefing was necessary and supplemental briefs have now been filed. *Id.*; *see also* ECF Nos. 44, 45. After consideration of all briefing filed, the Court finds this suit must be dismissed for lack of subject matter jurisdiction.

## I.
### BACKGROUND

The present matter arises out of a longstanding attempt by Plaintiff GE Oil & Gas, LLC ("GEOG") to collect on a $25,000,000 loan it made to Turbine Generation Services, LLC ("TGS"), which was guaranteed by Michel B. Moreno ("Moreno").[1] According to the Complaint before the Court, GEOG has obtained a Judgment from the State of New York against Moreno and TGS in the amount of $39,846,575.34, and that Judgment has now been domesticated in Louisiana and

---

[1] *See e.g. GE Oil & Gas, Inc. v. Turbine Generation Services, LLC*, 6:14-00760, 2015 WL 588835 (W.D.La. Feb. 11, 2015); *GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*, 18-CV-7555 (VEC), 2019 WL 2008575 (S.D.N.Y. May 7, 2019); *GE Oil & Gas, Inc. v. Turbine Generation Servs., L.L.C.*, 168 A.D.3d 563, 565 (N.Y. App. Div. 2019).

Texas. [ECF No. 1 at ¶¶ 1-2]. However, according to GEOG, "TGS and Moreno have continuously evaded GEOG's enforcement of the Judgment and obstructed its attempts to obtain documents and information identifying the judgment debtor's assets." *Id.* at ¶ 2. Accordingly, GEOG has filed this suit, which is solely for declaratory relief, in furtherance of its efforts to collect on its Judgment.

GEOG names the following persons and entities as Defendants to this suit:

1. Dalis Moreno Waguespack in her capacity as Trustee for five of the Trusts made Defendants to this suit[2]

2. Jesus Moreno in his capacity as Trustee for two Trusts named as Defendants[3]

3. William W. Rucks, IV in his capacity as Trustee for two Trusts named as Defendants[4]

4. MBM 2011 DOH GRAT[5]

5. TCM 2011 DOH GRAT

6. MBM 2011 MGH GRAT

7. TCM 2011 MGH GRAT

8. Moreno Children's Trust

9. MBM 2008 Children's Trust No. 1

10. TCM 2008 Children's Trust No. 1, and

11. MBM Family Trust No. 1.

Defendants numbered 4 through 11, *supra*, are collectively referred to herein as the "Trust Defendants." GEOG asks the Court to declare that GEOG's New York Judgment is "enforceable against the Trust Defendants and alternatively declare that the loans taken by Moreno from the

---

[2] Specifically, Dalis Waguespack is named in her capacity as Trustee of MBM 2011 DOH GRAT, TCM 2011 DOH GRAT, MBM 2011 MGH GRAT, TCM 2011 MGH GRAT, and MBM Family Trust No. 1.
[3] Jesus Moreno is named in his capacity as Trustee for MBM 2008 Children's Trust No. 1 and TCM 2008 Children's Trust No. 1.
[4] William Rucks is named in his capacity as Trustee for Moreno Children's Trust and MBM Family Trust No. 1.
[5] As set forth in the Complaint, a "GRAT" is a grantor-retained annuity trust.

Trusts [sic] Defendants were, in fact, simulations and that the proceeds of those loans are therefore subject to seizure." *Id.* at 25. GEOG pleads the following theories in support of the relief it seeks:

1. <u>Piercing the Veil of the Trusts</u>: GEOG asserts the Court should pierce the veil of the trusts, arguing the Trust Defendants "are ultimately alter egos of Tiffany and Michel Moreno," and that "Moreno has used the Trust Defendants to commit fraud upon his judgment creditor, GEOG."[6]

2. <u>Simulation</u>: GEOG contends Moreno executed several promissory notes in favor of MOR DOH Holdings, LLC. Although Moreno purports these notes represent valid loans, "in reality, they were transfers of trust assets out of the trusts" which Moreno is not obligated to repay.[7] Accordingly, GEOG asserts it is entitled to invoke the nullity of these transfers and seize the cash proceeds of the simulated loans.

3. <u>Single Business Enterprise</u>: GEOG contends "the Trust Defendants and their assets should be deemed liable for the debts of Moreno to GEOG," because the Trust Defendants "are organized and controlled as to make them merely an instrumentality or adjunct of Moreno," thereby constituting a single business enterprise.[8]

4. <u>Prete Nom and Simulation</u>: GEOG asserts that "Moreno and his wife pretend to have settled distinct trusts, but continue to use the assets as if they were their own," thereby setting up the Trust Defendants as prête-noms, or strawmen, to "do [Moreno's] bidding."[9]

GEOG asserts jurisdiction over this matter exists pursuant to 28 U.S.C. § 1332 (diversity of citizenship). [ECF No. 1 at 5]. According to the filings, GEOG is a citizen of Delaware, Texas, Ohio, Connecticut, New York and Massachusetts. [ECF No. 34-11]. GEOG asserts all Trustee Defendants are citizens of Louisiana. [ECF No. 1 at 3-5]. In its briefing, GEOG contends that the Trust Defendants are nominal parties, the Trustee Defendants are the real parties in interest, and therefore "the citizenship of the individually named trustees controls" the diversity jurisdiction inquiry. [ECF No. 44 at 20; *see also Id.* at 13-14].

---

[6] ECF No. 1 at 20.
[7] *Id.* at 22-23.
[8] *Id.* at 23-24.
[9] *Id.* at 24-25.

## II.

### DIVERSITY JURISDICTION

**A.**     **Applicable Law**

"Proper jurisdiction for a federal court is fundamental and necessary before touching the substantive claims of a lawsuit." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012). District courts have an independent obligation to ensure they do not exceed the scope of their limited jurisdiction. *See e.g. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(h)(3)). Thus, district courts "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). "The burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Arena* at 219 (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001)).

District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the parties are "citizens of different States." 28 U.S.C. § 1332(a)(1). The diversity statute requires "complete diversity" of citizenship, meaning a "district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir.2003). "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Savings Association v. Lee*, 446 U.S. 458, 460 (1980). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461. Further, "[t]he inquiry into the existence of complete diversity requires considering the citizenship even of absent indispensable parties." *Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994); *see also Corfield* at 865 n.10 (Courts must consider the citizenship of non-parties "when a

party already before the court is found to be a non-stake holder/agent suing only on behalf of another").

## B.    Application

In this matter, GEOG has sued both the Trustees and the Trusts which the Trustees manage. The Supreme Court has established three rules for determining jurisdictional citizenship when a trust or a trustee is involved in a lawsuit. In *Navarro*, the Supreme Court explained that when a trustee files a lawsuit in his or her name, the trustee's State of domicile determines his or her jurisdictional citizenship. *Navarro*, 446 U.S. 458, 465-66 (1980); *see also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1016 (2016). In *Carden*, the Supreme Court held that when an "artificial entity" other than a corporation sues or is sued, the entity's jurisdictional citizenship is determined by looking to the citizenship of each of its members. *Carden v. Arkoma Associates*, 494 U.S. 185, 195 (1990). In *Americold*, the Supreme Court reaffirmed that when an "artificial entity" sues or is sued, its jurisdictional citizenship is determined by the domicile of each of its members. *Id.* at 1016. *Americold* involved a suit brought against a real estate investment trust ("REIT") created under Maryland law. In finding the citizenship of the REIT included the domicile of each of its members, the Court explained:

> *Americold* disputes this conclusion. It cites a case called *Navarro Savings Assn. v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), to argue that anything called a "trust" possesses the citizenship of its trustees alone, not its shareholder beneficiaries as well. As we have reminded litigants before, however, "*Navarro* had nothing to do with the citizenship of [a] 'trust.'" *Carden,* 494 U.S., at 192–193, 110 S.Ct. 1015. Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. 446 U.S., at 465, 100 S.Ct. 1779. **This rule coexists with our discussion above that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members**.

> That said, *Americold*'s confusion regarding the citizenship of a trust is understandable and widely shared. *See Emerald Investors Trust v. Gaunt Parsippany Partners,* 492 F.3d 192, 201–206 (C.A.3 2007) (discussing various

approaches among the Circuits). The confusion can be explained, perhaps, by tradition. Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. *Klein v. Bryer,* 227 Md. 473, 476–477, 177 A.2d 412, 413 (1962); Restatement (Second) of Trusts § 2 (1957). Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. *Glenn v. Allison,* 58 Md. 527, 529 (1882); *Deveaux,* 5 Cranch, at 91. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. *Navarro,* 446 U.S., at 462–466, 100 S.Ct. 1779. For a traditional trust, therefore, there is no need to determine its membership, **as would be true if the trust, as an entity, were sued.**

*Id.* at 1016 (emphasis in bold added). The language in bold quoted above has caused some confusion among the Courts. As discussed by the Fourth Circuit:

[T]he statement may generate as many questions as it answers. Putting aside the lack of a comprehensive definition of a "traditional trust," the "as would be true if the trust, as an entity were sued" phrase seems open to several interpretations.

For example, does the phrase mean that there is no need to determine entity membership for diversity purposes when a "traditional trust" is sued as an entity? Or do we read the statement to mean that a trust sued as an entity must prove entity membership because it is a separate legal person from the individual trustees?

*Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York*, 822 F.3d 739, 749 (4th Cir. 2016); *see also Wang by and through Wong v. New Mighty U.S. Trust*, 843 F.3d 487, 493 (D.C. Cir. 2016); *Demarest v. HSBC Bank USA, N.A. as Tr. for registered holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2,* 920 F.3d 1223, 1229 (9th Cir. 2019); *GBForefront, L.P. v. Forefront Management Group, LLC*, 888 F.3d 29, 38-39 (3d Cir. 2018). The undersigned likewise was concerned that the quoted language perhaps indicated that because the Trusts (as well as the Trustees) have been sued in this matter, the Trusts' citizenship should be determined by the citizenship of their beneficiaries. Accordingly, briefing was ordered on this issue.

"In its simplest form, a trust is created when one person (a 'settlor' or 'grantor') transfers property to a third party (a 'trustee') to administer for the benefit of another (a 'beneficiary')." *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.*, 139 S.Ct. 2213, 2217-18 (2019). "As traditionally understood, the arrangement that results is not a distinct legal entity, but a fiduciary relationship between multiple people." *Id.* at 2218 (internal quotation marks omitted); *see also* La. R.S. 9:1731 ("A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another.")[10] "The trust comprises the separate interests of the beneficiary, who has an 'equitable interest' in the trust property, and the trustee, who has a 'legal interest' in that property." *Kaestner* at 2218; *but see Read v. U.S. ex rel. Dept. of Treasury*, 169 F.3d 243, 248 (1999) (Unlike common law jurisdictions, under the Louisiana Trust Code title to the trust property vests in the trustee alone, and only the trustee has a civilian "real right" in trust property; conversely, a beneficiary has "only a civilian 'personal right,' *vis-à-vis* the trustee, to claim whatever interest in the trust relationship the Settlor has chosen to bestow."); *accord Bridges v. Autozone Properties, Inc.*, 2004-0814, p. 18 (La. 3/24/05); 900 So.2d 784, 796.[11]

---

[10] Because Louisiana's "civilian-like" Trust Code differs significantly from the common law of trusts, the Court has looked to Louisiana law for its treatment on the subject. *See Read v. U.S. ex rel. Dept. of Treasury*, 169 F.3d 243, 248 n.14 (1999); *Americold*, 136 S.Ct. at 1015 (looking to state law to determine whether a real estate investment trust possessed the citizenship of the trustees alone, or all of its members); *accord People of Puerto Rico v. Russell & Co., Sucesores S. En. C.,* 288 U.S. 476, 480–81 (1933).

[11] *But see* Ronald J. Scalise Jr., *Some Fundamentals of Trusts: Ownership or Equity in Louisiana?*, 92 Tul. L. Rev. 53, 125 (2017) (arguing *Read* and *Bridges* were incorrectly decided, and that under the Louisiana Trust Code, both the trustee and the beneficiary have real rights in the trust property); *accord* 2 A.N. Yiannopoulos and Ronald J. Scalise, Jr., La. Civ. L. Treatise, Property § 9:36 (5th ed.).

As traditionally understood at common law, the fiduciary relationship created by a trust "was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name."[12] *Americold* at 1016 (citations omitted); *see also Hometown 2006-1 1925 Valley View, LLC v. Prime Income Asset Mgmt., LLC*, 847 F.3d 302, 306-07 n.17 (5th Cir. 2017). The same is true under the Louisiana Trust Code. *See* LA. CODE CIV. PROC. art. 699 (trustee is the proper party to sue to enforce a right of the trust estate); LA. CODE CIV. PROC. art. 742 (trustee is the proper defendant in an action against the trust estate).[13] And, "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro* at 464 (citing *Bullard v. Cisco*, 290 U.S. 179 (1933)). Without such customary powers a trustee is a "naked trustee" who acts as a "'mere conduit' for a remedy flowing to others," with no interest in the underlying litigation. *Id.* (Where trustees were vested with customary powers, and there was no evidence of "sham or collusion," trustees were not "naked trustees") (quoting *McNutt v. Bland*, 43 U.S. 9, 13–14 (1844)).

In this matter, the trust documents before the Court would normally indicate the Trustees are the real parties to the controversy, because those documents grant the foregoing "customary powers" to the Trustees.[14] However, the factual underpinning of each cause of action asserted by GEOG is that despite what the trust documents state, in reality the Trust Defendants are Michel and Tiffany Moreno's alter egos, and therefore the protections ordinarily provided to the trust

---

[12] In contrast to the "relationship" created by a traditional trust, an artificial "entity" is "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners." *Entity*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Yonce v. Miners Mem'l Hosp. Ass'n*, 161 F.Supp. 178, 186 (W.D.Va. 1958).

[13] *But see Tr. For Schwegmann v. The Schwegmann Family Tr.*, 05-95 (La. App. 5 Cir. 5/31/05, 3); 905 So.2d 1143, 1144-45 (stating the suit was by the trust *and* the beneficiary; however, there is no discussion as to whether any party questioned the trust's capacity to be a party to a suit).

[14] *See e.g.* ECF No. 34 at 4, 10-14; ECF No. 34-4 at 1, 6-11.

relationship should be disregarded.[15] Indeed, the Complaint explicitly states, "The trust instruments forming the Trust Defendants are simulations, whereby Moreno and his wife pretend to have settled distinct trusts, but continue to use the assets as if they were their own. *The trust instruments were intended to have either no effect or an effect other than their intended purpose*." [ECF No. 1 at ¶ 85 (emphasis added). In fact, all of the allegations in the Complaint indicate it is Michel and Tiffany Moreno, and not the named Trustees, who exercise the "customary powers to hold, manage, and dispose of assets" held in trust, *Navarro* at 464, and that the formal Trustees are trustees in name only, to wit:

- "Moreno regularly loaned himself funds out of the Trust Defendants, and then forgave those loans as he saw fit, without adequate documentation or consideration. Moreno freely loans himself trust funds and then periodically forgives those loans at his discretion and whim." [ECF No. 1 at ¶ 50].

- "The journal entries of MOR MGH Holdings, LLC reflect the flow of Moreno's funds from one Moreno-controlled entity to the next. On October 13, 2013, the Cash Disbursements Journal reflects distributions to MBM 2011 MGH GRAT and TCM 2011 MGH GRAT, both in the amount of $206,614, and then a credit from Michel Moreno in the amount of $413,228, the combined total of the two debits." *Id.* at ¶ 51; *see also Id.* at ¶¶ 52-60 (describing a similar pattern of conduct by Michel Moreno with his other business entities and trusts he and his wife created).

- "[T]he evidence gathered reflects that Mr. Moreno did not observe proper and appropriate legal formalities in making these transfers and transactions – apparently based upon his belief that each of these trusts were his own. . . . [B]oth Tiffany and Michel Moreno used the trusts for their own benefit and account." *Id.* at ¶ 61.

- "The veils of the Trust Defendants should be pierced, because they are ultimately alter egos of Tiffany and Michel Moreno. In allowing Michel Moreno to use the Trust Defendants as a personal bank account, Waguespack ignored the appropriate footing upon which trust business should have been conducted. And finally, by moving assets from trust to trust, Moreno has used the Trust Defendants to commit fraud upon his judgment creditor, GEOG." *Id.* at ¶ 65.

---

[15] As noted by one court, because a traditional trust is a fiduciary relationship and not an artificial entity, "it's impossible for a trust to be anybody's alter ego." *Greenspan v. LADT, LLC*, 191 Cal.App.4th 486, 521 (2010). However, while applying the alter ego doctrine to trusts is perhaps conceptually unsound, the doctrine is easily applied by creditors to trustees. *Id.* (citing Richard W. Nenno & John E. Sullivan, III, *Planning and Defending Domestic Asset–Protection Trusts*, SR016 ALI-ABA 667, 733-34 (Nov. 16-20, 2009)); *accord In re Raymond*, 529 B.R. 455, 463 (Bankr. D. Mass. 2015).

- "[M]oreno causes the Trust Defendants to pay debts owed by other Trust Defendants and to enter into transactions with one another for less than equivalent value." *Id.* at ¶ 67.

- "[M]oreno causes his own legal expenses to be paid out of the trusts." *Id.* at ¶ 68.

- "Moreno treats and describes the Trust Defendants as if their assets are all ultimately his own and moves the assets freely, at his discretion, as though the assets are interchangeable." *Id.* at ¶ 69.

- "Moreno has executed several Promissory Notes in favor of MOR DOH Holdings, LLC, presumably for cash payments from its funds." *Id.* at ¶ 76. "While Moreno purports that these were loans, in reality, they were transfers of trust assets out of the trusts." *Id.* at ¶ 77. "These loans were unilateral transfers that Moreno is not obligated to repay." *Id.* at ¶ 79.

- "The legal fiction of the Trust Defendants as distinct legal entities should be disregarded because they are organized and controlled as to make them merely an instrumentality or adjunct of Moreno and one another." *Id.* at ¶ 81.

- "In setting up the Trust Defendants and then operating them in the way he has, Moreno has set them up as his *prete nommes*, straw men that do his bidding." *Id.* at ¶ 87.

Defendants theory of the case is clear from the Complaint's allegations: the Morenos exercise "the customary powers to hold, manage and dispose of assets," and the formal Trustees are "'naked trustees' who act as 'mere conduits' for a remedy flowing to [the Morenos]." *Navarro* at 464 (quoting *McNutt*, 2 How. at 13-14). As a result, the Trustee Defendants are not the "real parties not the controversy," and the Court must thus disregard the Trustee Defendants for citizenship purposes. *Id.* at 461.

The Court is now left with the question of how to determine the citizenship of the Trust Defendants. Unfortunately, the case law after *Navarro* and *Americold* has provided little guidance as far as determining the citizenship of a traditional trust when the allegations in the complaint show that the trust is a sham and that the trustee is merely a naked trustee. Most of the case law focuses on the distinction between "traditional" and "business" trusts, a distinction that is irrelevant here because the Trust Defendants were purportedly established as traditional trusts.

The Fifth Circuit's decision in *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 357 (5th Cir. 2017) provides some guidance. The *Bynane* court eschewed the distinction between business trusts and traditional trusts in determining a trust's citizenship. Instead, the court ruled that when a trustee is "sued in its own name as trustee and it has sufficiently real and substantial control over the trust's assets," the trustee's citizenship alone is determinative for purposes of diversity jurisdiction. *Id.* at 358. Conversely, where, as here, the trust as an entity is a named party and the trustee allegedly lacks "real and substantial control" over the trust property, *Bynane* and *Navarro* suggest that the Court should look to the other constituents of the trust relationship—the settlors and the beneficiaries—in determining citizenship for purposes of diversity jurisdiction. *Id.* at 357 ("[B]ecause the real estate investment trust [in *Americold*] was sued in its own name (rather than the suit being filed against the trustee), the Supreme Court declined to apply the rule from *Navarro* that a federal court looks only at the trustee's citizenship; instead, the Supreme Court applied the 'oft-repeated' rule that an unincorporated entity (the trust in that case) possesses the citizenship of its members."). This rule is consistent with *Navarro*'s rationale for relying on the citizenship of the trustee in the first place: the trustee controls the trust's property and is the real party in interest. Where that power to control trust property is missing, the citizenship of the trustee lacks relevance when compared to the citizenship of the trust beneficiaries or other trust constituents (such as the settlors) that actually exercise "real and substantial control" over the trusts' property.[16]

---

[16] This approach is also consistent with Wright & Miller's suggestion that courts look to the role of the trustee when determining the trust's citizenship. 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3606 (3d ed. 1998). If the trust is "active," meaning that "the trustee has some affirmative duty of management or administration besides the obligation to transfer the property to the beneficiary," the citizenship of the trustee controls. *Id.* If the trust is "passive," meaning "the trustee has no duty other than to transfer the property to the beneficiary," the citizenship of the beneficiaries controls. *Id.*

In sum, the Court will look to the citizenship of the beneficiaries of the Trust Defendants—the Moreno children—and the settlors of the Trust Defendants—the Morenos. All of these parties are citizens of Texas and, hence, are not diverse. *See* ECF No. 44 at 17.  While this suit must be dismissed on this basis alone, there is another reason that the Court lacks jurisdiction in this case: the Morenos and the beneficiaries of the Defendant Trusts are indispensable parties under Rule 19 of the Federal Rules of Civil Procedure.

### III.
### JOINDER UNDER RULE 19

**A.      Applicable Law**

"The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir.1986). To accomplish this goal, Rule 19(a) first provides a framework for deciding whether a given person or entity should be joined as a party. If joinder is warranted, then the person or entity will be made a party to the suit unless joinder would destroy the court's jurisdiction. If joinder would defeat jurisdiction, then Rule 19(b) provides a framework for the Court to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* at 19(b); *see also Pulitzer-Polster* at 1308-09. Stated differently, Rule 19(b) guides the Court in determining "whether the party is 'merely necessary' to the litigation, or in fact 'indispensable.'" *Moss v. Princip*, 913 F.3d 508, 515 (5th Cir. 2019) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 117–19 (1968)). Rule 19 reads in pertinent part as follows:

> **(a) Persons Required to Be Joined if Feasible.**
>
> > **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or

> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

. . . .

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)**   protective provisions in the judgment;

**(B)**   shaping the relief; or

**(C)**   other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19. "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Provident Tradesmens Bank* at 118. The factors vary according to the case, with "some such factors being substantive, some procedural, some compelling by themselves, and some

subject to balancing against opposing interests." *Id.* at 118–19. There is no prescribed formula for determining whether a person or entity is an indispensable party. *Id.* at 118 n.14. Indeed, the rule "militate[s] in favor of a highly practical, fact-based decision." *Pulitzer-Polster* at 1309.

**B.    Analysis**

**1.    Whether Michel and Tiffany Moreno are required parties under Rule 19, and if so, whether they are indispensable.**

As noted *supra*, the Complaint asserts the Morenos, rather than the Trustee Defendants, exercise the customary powers to hold, manage, and dispose of assets. In fact, there are no allegations in the Complaint that the Trustee Defendants exercise any power over the trust property whatsoever. The Morenos are clearly persons to be joined "if feasible," as their presence will be "critical to the disposition of the important issues in the litigation," and their evidence "will either support the complaint or bolster the defense." *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (quoting *Haas v. Jefferson National Bank*, 442 F.2d 394, 398 (5th Cir. 1971)). GEOG seeks to pierce the veil of the Trust Defendants based on the actions of the Morenos, and therefore the Morenos are more than "key witness[es] whose testimony would be of inestimable value." *Id.* (quoting *Haas*, *supra*). Instead, they are the primary drivers of the conduct sued upon. Under these facts, the Morenos are required parties.[17]

Because joinder of the Morenos would destroy diversity jurisdiction, the Court must determine whether to press forward or dismiss this litigation. Again, factors to consider include: (1) prejudice to an absent or existing party from judgment; (2) whether the shaping of relief could lessen the prejudice to absent parties; (3) whether adequate relief can be provided without

---

[17]*See also* PETER VANTYLE, 15 CYCLOPEDIA OF FEDERAL PROCEDURE § 76:24 (3d ed.) ("Where the action is upon some special equity and the debt is not settled, or the debtor has some remaining right or interest in the property as, perhaps, where the conveyance is in trust, the debtor is a necessary, and even indispensable, party").

participation of the absent parties; and (4) whether the plaintiff has another effective forum if the suit is dismissed. FED. R. CIV. P. 19(b); *see also Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997). At the outset, the Court notes that the Fifth Circuit has found that where an absent party was the key participant in the conduct sued upon, he or she is indispensable based primarily upon that fact alone. *See e.g. Freeman* at 559-60; *Foreman v. Mesirow*, 167 F.2d 711, 713 (5th Cir. 1948) (settlor was an indispensable party where he was head of a conspiracy involving his family members and trustee). Here, the Court finds the fact that the Morenos are the primary participants in the conduct sued upon weighs strongly in favor of their indispensability to this litigation.

Additionally, the Court finds judgment in favor of GEOG would result in prejudice to the Morenos, as they have a beneficial interest in the Grantor Retained Annuity Trusts. [ECF No. 1 at ¶¶ 36, 43, 45, 47, 49]. Therefore, a judgment rendered in the absence of the Morenos may, as a practical matter, impair or impede their ability to protect their interest in the subject matter. *See, e.g., Sax v. Sax*, 294 F.2d 133, 136 (5th Cir. 1961) (settlor who was neither trustee nor beneficiary under trust was not an indispensable party where settlor did "not stand to be deprived of any beneficial interest, nor receive a greater interest, depending on the outcome of [the] litigation"). As to the second and third factors, the Court is unable to discern any way in which to shape relief in this case that could be tailored to avoid prejudice to the Morenos.[18] As to the fourth factor, the Louisiana state court system is a superior forum, as the Court is aware of no obstacle to the maintenance of this dispute in that forum with all indispensable parties. Further, the Louisiana state court system is the superior forum because whether trust assets can be utilized to satisfy the obligation of a debtor-settlor by applying the corporate theory of alter ego appears to be a *res nova*

---

[18] *See* FED. R. CIV. P. 19 advisory committee's note to 1966 amendment (The third factor under Rule 19(b) "meshes with the other factors, especially the 'shaping of relief' mentioned under the second factor").

issue in Louisiana. *See e.g. Crutcher-Tufts Res., Inc. v. Tufts*, 2009-1572 (La.App. 4 Cir. 4/28/10, 3-4), 38 So.3d 987, 990 ("Plaintiffs cannot point to a single case in which the sanctity of a trust can be disregarded by way of an alter ego claim to satisfy the debts of a third party"). Further, dismissal of this action at this stage in the legal proceedings would require little duplication of effort if the suit were refiled in state court. For all of these reasons, the Court finds the Morenos are indispensable parties to this action, and that this action should not proceed without their joinder. As joinder of the Morenos would oust jurisdiction, the Court finds this case must be dismissed.

> **2.      Whether the beneficiaries of the trusts are required parties under Rule 19, and if so, whether they are indispensable.**

The Court likewise finds the beneficiaries are required parties under Rule 19(a). They claim an interest in the subject of the action (the trust property) and are "so situated that disposing of the action in . . . [their] absence may . . . as a practical matter impair or impede . . . [their] ability to protect the interest." FED. R. CIV. P. 19(a)(1); *see also, e.g., Bank One Texas v. United States*, 157 F.3d 397, 402 (5th Cir. 1998) (Absent a conflict of interest, or a pleading that the beneficiaries are not adequately represented, beneficiaries are not considered necessary parties); *Carey v. Brown*, 92 U.S. 171, 172 (1875) ("The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the cestuis que trust as well as the trustees are necessary parties"); *McRea v. Branch Bank of Alabama*, 60 U.S. 376, 377 (1856) (In suit by bank against deceased debtor's estate to set aside fraudulent conveyance to a third party of property previously held in trust to indemnify surety of debtor, the beneficiary of the trust was an indispensable party); *Kerrison v. Stewart*, 93 U.S. 155, 160 (1876) (if a trustee is invested with sufficient control over the trust property, then the beneficiaries are not necessary parties).

Because joinder of the beneficiaries would oust jurisdiction, the Court turns to whether they are indispensable. As to the first factor, if GEOG succeeds in obtaining the relief it requests, the beneficiaries will ultimately be deprived of the property conveyed to them in trust. Thus, the beneficiaries' interest is directly antagonistic to GEOG's interest in the limited pool of property subject to trust. Further, while the interests of the Trustees and the beneficiaries would likely be aligned to the extent they wish to defeat GEOG's claim to the trust property, their interests might not be aligned in other areas. For example, if the Court finds the Trustees are the alter egos of the Morenos, this would essentially constitute a finding that the Trustees breached their duty of loyalty to the beneficiaries and could potentially be used against the Trustees in future litigation by the beneficiaries for breach of the trust agreements and/or breach of the Trustees' fiduciary duties. *See e.g. Pulitzer-Polster*, 784 F.2d at 1313 (negative precedent to absent parties is a factor to consider); *accord Doty v. St. Mary Par. Land Co*., 598 F.2d 885, 887 & n.4 (5th Cir. 1979). Conversely, dismissal of this suit will result in negligible prejudice to GEOG because of the availability of an alternative forum, namely, the Louisiana state court system. These possibilities indicate the beneficiaries could be prejudiced if the suit is allowed to proceed in their absence. As to the second and third factors, this is not a case where the Court can shape relief so as to avoid prejudice to the absent parties, and it is unclear whether any judgment from this Court would be adequate without joinder of the beneficiaries. As to the fourth factor, the Court finds the Louisiana state court system is the superior forum for the reasons discussed *supra*. For all of these reasons, the Court finds the beneficiaries are indispensable parties to this litigation, and that this matter should not proceed in their absence. Because joinder of the beneficiaries would divest jurisdiction, this case must be dismissed.[19]

---

[19] The Court notes that even if this matter could proceed without joinder of either the Morenos or the trust beneficiaries, it would strongly consider declining to hear this matter under the "substantial discretion"

# IV.
## CONCLUSION

As set forth above, the Court finds the Trust Defendants are not diverse in citizenship from Plaintiff, and therefore jurisdiction over this matter is lacking. Alternatively, the Court finds there are absent, indispensable parties whose joinder would deprive the Court of subject-matter jurisdiction, but without whom this action should not proceed. For these reasons, this suit must be DISMISSED.

THUS DONE in Chambers on this 1st day of March, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

conferred upon it in deciding whether to declare the rights of the litigants to this action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Again, the issues to be decided are *res nova* issues of state law, and Louisiana has a strong interest in whether the corporate theory of alter ego is available to creditors against trust assets.